ORIGINAL ACTION JOURNAL ENTRY AND OPINION
On March 27, 2002, the relator, David King, commenced this mandamus action against the respondent, Clerk of Courts Gerald Fuerst, to compel the clerk to serve upon him the final judgments in the underlying cases, In re Jimi King, Cuyahoga County Common Pleas Court Juvenile Division Case No. 904168 and In re Amber King, Cuyahoga County Common Pleas Court Case No. 904167. On April 17, 2002, the respondent moved to dismiss, and on May 1, 2002, Mr. King filed his brief in opposition. On May 9, this court converted the motion to dismiss to a motion for summary judgment. Then pursuant to this court's order, Mr. King on May 22, 2002, filed his brief in opposition to the summary judgment motion. For the following reasons, this court grants the respondent's motion for summary judgment and denies Mr. King's application for a writ of mandamus.
David King is the father of Jimi and Amber King. In the underlying cases on May 17, 2001, the Cuyahoga County Common Pleas Court, Juvenile Division, found that Jimi and Amber were dependent and awarded permanent custody to the Cuyahoga County Department of Children and Family Services.[1] On May 21, 2001, the court journalized its entry for this hearing, and the docket indicates that service of the entry was mailed to the parties, including the father, on the same day. (Copies of the relevant docket pages are attached.)
However, Mr. King maintains that he was not actually served with the May 21, 2001 journal entry. Rather, from the materials he submits, Mr. King implies that his mother obtained a copy of the journal entry and notified his attorneys at the Public Defender's Office.[2] Mr. King appealed the award of permanent custody of his children on June 21, 2001, in In the Matter of Amber and Jimi King, Cuyahoga County Court of Appeals Case No. 79854. Ultimately, this court dismissed the appeal as untimely.
Mr. King now argues that because the clerk never served him, as evidenced by his failure to receive service in prison, the clerk still has a duty, enforceable in mandamus, to serve him. Because the clerk never served him as required by the Civil Rules, the time for appealing the dependency actions never really began to run; once the clerk makes service, pursuant to Civ.R. 58(B) and App.R. 4(A), Mr. King can then timely appeal the underlying cases.
The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondent must have a clear legal duty to perform the requested relief and (3) there must be no adequate remedy at law. State ex rel. Ney v. Niehaus (1987),33 Ohio St.3d 118, 515 N.E.2d 914. Furthermore, mandamus is not a substitute for appeal. State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 631 N.E.2d 119; State ex rel. Daggett v. Gessman (1973), 34 Ohio St.2d 55, 295 N.E.2d 659; and State ex rel. Pressley v. Industrial Commission of Ohio (1967), 11 Ohio St.2d 141, 228 N.E.2d 631, Paragraph Three of the Syllabus. Thus, mandamus does not lie to correct procedural irregularities in the course of a case. State ex rel. Tommie Jerninghan v. Judge Patricia Gaughan (Sept. 26, 1994), Cuyahoga App. No. 67787. Furthermore, if the relator had an adequate remedy, regardless of whether it was used, relief in mandamus is precluded. State ex rel. Tran v. McGrath, 78 Ohio St.3d 45, 1997-Ohio-245, 676 N.E.2d 108 and State ex rel. Boardwalk Shopping Center, Inc. v. Court of Appeals for Cuyahoga County (1990), 56 Ohio St.3d 33, 564 N.E.2d 86. Moreover, mandamus is an extraordinary remedy which is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. State ex rel. Taylor v. Glasser (1977), 50 Ohio St.2d 165, 364 N.E.2d 1; State ex rel. Shafer v. Ohio Turnpike Commission (1953), 159 Ohio St. 581, 113 N.E.2d 14; State ex rel. Connole v. Cleveland Board of Education (1993),87 Ohio App.3d 43, 621 N.E.2d 850; and State ex rel. Dayton-Oakwood Press v. Dissinger (1940), 32 Ohio Law Abs. 308.
Mr. King's argument is not well taken. As provided by Civ.R. 58(B) and as clarified by the Supreme Court of Ohio in Atkinson v. Grumman Ohio Corporation (1988), 37 Ohio St.3d 80, 523 N.E.2d 851, within three days of the entry of any final appealable judgment, the clerk of court shall serve a notice of the entry in any manner provided in Civ.R. 5, upon every party who is not in default for failure to appear. Once the clerk has served notice of the entry and entered the appropriate notation in the docket, the notice shall be deemed to have been served. The failure of any party to receive such notice shall not affect the validity of the judgment or the running of the time for appeal.
In similar cases in which a dispute arose concerning whether service was made or not, the notation on the docket indicating service was made on a given date controls over the protestation of a party that service was never made. In J. W. Walker v. Judge Judith Kilbane Koch, Cuyahoga App. No. 81131, 2002-Ohio-2620, a procedendo action, the relator sought to compel the judge to forward a copy of the final, appealable order so he could timely file an appeal. This court denied the writ because, inter alia, the legal duty to serve the order had already been fulfilled; the docket in the underlying action clearly demonstrated that notice had been provided. Similarly, in State of Ohio v. Christopher Blount (Aug. 26, 1993), Cuyahoga App. Nos. 65095 and 65096, Mr. Blount appealed the denial of his motion to vacate the denial of his postconviction petition. The basis for his motion to vacate was that the court had never served the entry denying the postconviction petition. This court in affirming the denial of the motion to vacate ruled that the motion to vacate was not well founded because the court had served the denial of the postconviction petition as shown by the record. See also, State of Ohio v. Andre Jackson (June 22, 1995), Cuyahoga App. Nos. 67025, 67878 and 68085: In the case sub judice, the docket entries clearly show that notice was mailed on each final order issued by the trial court. The appellant merely argues that the notice was not received. This issue was specifically decided in Atkinson, surpa, and the appellant's argument is not well taken. (Slip op. at pg. 5.) In the present case, the docket demonstrates that service was mailed on May 21, 2001. Thus, the requested duty has already been fulfilled, and mandamus should not issue.
The principles of res judicata and collateral estoppel also bar this mandamus action. In Case No. 79854, when the County moved to dismiss the appeal because it was untimely, Mr. King on November 8, 2001, filed a brief in opposition. He argued that the record failed to indicate when the final judgment was served on him; in the absence of such certainty, the June 21, 2001 notice of appeal must be considered timely. The County in response argued that the docket did in fact establish that service was made on May 21, 2001; it cited the following docket language: J.E. DATED 5/17/01 JOURNALIZED ON 5/21/01 MM. COPIES TO GIBBONS, CARSON, CCDCFS, PARENTS. This court then ruled that the appeal was untimely. This relevant issue of service was placed squarely before this court and was necessary to the decision, and this court decided adversely to Mr. King. Thus, the principles of issue preclusion bar this mandamus action. State ex rel. Banazkewycz v. Judge Merrick (1968), 15 Ohio St.2d 234,238 N.E.2d 802, and State ex rel. Welsh v. Ohio State Medical Board (1964), 176 Ohio St. 136, 198 N.E.2d 74.
Accordingly, this court grants the respondent's motion for summary judgment and denies the application for a writ of mandamus. Costs assessed against relator. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
MICHAEL J. CORRIGAN, J. AND TERRENCE O'DONNELL, J. CONCUR.
[1] The Juvenile Court in its order further found that the children's mother is dead and that Mr. King had pleaded guilty to twenty-two counts of gross sexual imposition and rape. Accordingly, Mr. King was and still is imprisoned in Ohio's prison system. In its entry the Juvenile Court related that Mr. King was then at the Lorain County Correctional Facility.
[2] Mr. King does not explain how his mother obtained a copy of the journal entry. At that time the Public Defender was not representing Mr. King on the dependency matter, but apparently on his criminal convictions. The Public Defender tendered Mr. King some help to appeal the dependency actions.